J-S06043-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.G.-M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.G.-M., MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 742 EDA 2023 |

Appeal from the Dispositional Order Entered February 24, 2023
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-JV-0000081-2023

BEFORE: DUBOW, J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:         **FILED AUGUST 15 2024**

A.G.-M. appeals from the dispositional order entered after the juvenile court adjudicated him delinquent for acts constituting possession of a firearm with an altered manufacturer's number, possession of a firearm by a minor, and possession of a weapon on school property.[1]  We affirm.

We summarize the factual and procedural background of this appeal as follows.  On February 1, 2023, at approximately 1:00 p.m., Jay Melber ("Officer Melber"), a school resource officer at Louis E. Dieruff High School, received a report of a student possibly carrying a firearm inside the school.  **See** N.T., 2/23/23, at 28, 74.  When Officer Melber arrived at the reported location, other security officers removed a student, L.S., from a classroom.  **See id**. at 29.  Officer Melber took L.S. to a nearby office, and L.S. admitted he had a gun.  **See id**.  Officer Melber recovered from L.S.'s pocket a loaded

---

[1] **See** 18 Pa.C.S.A. §§ 6110.2, 6110.1(a), 912.

9-mm pistol, which had its serial number filed off. *See id*. at 29-31. L.S. was also carrying a black and white backpack ("the backpack") at the time. *See id*. at 36, 38.[2] Officer Melber searched the backpack and, inside, found a 9-mm bullet and school identifications belonging to A.G.-M. *See id*. at 39. L.S. stated the gun was not his and he got it from a backpack in the vice principal's office. *See id*. at 101-02, 108.

Officer Melber learned that earlier that day, at approximately 11:50 a.m., a teacher had sent A.G.-M. to a vice principal's office because he failed to display or show his school identification. *See id*. at 50.[3] Although A.G.-M. went to and remained inside the office, the vice principal was in the cafeteria at the time. *See id*. at 63, 85-86. Officer Melber also reviewed and collected security camera videos, which showed a security officer escorting A.G.-M., who was carrying the backpack at the time, to the vice principal's office at approximately 11:54 a.m. *See id*. at 50-51, 62-63.[4] Videos from around

---

[2] There was no dispute that the backpack belonged to A.G.-M. *See* N.T., 2/23/23, at 112-13 (A.G.-M.'s mother identifying the backpack as A.G.-M.'s).

[3] Officer Melber explained that students must display their identifications while at school. *See* N.T., 2/23/23, at 42. If a student does not display or provide a school identification upon request by a teacher or staff, the student may be sent to a principal's office and searched. *See id*. at 43-44.

[4] Earlier portions of the video evidence apparently showed A.G.-M. entering the school with the backpack in the morning, at approximately 8:24 a.m. and interacting with L.S. *See* N.T., 2/23/23, at 60-61. There were no videos showing A.G.-M., the backpack, or L.S. after 8:25 a.m. until approximately 11:54 a.m. *See id*. at 79-80. We note the parties referenced the time-stamps on videos when discussing the chronology of events. *See id*. at 54-55.

12:00 p.m. showed A.G.-M.'s girlfriend approach and interact with L.S. in the hallway, after which they, and another girl, went to the office where A.G.-M. had been left. *See id*. at 65-66. Videos also showed L.S. go into the office without a backpack and then leave the office with the backpack. *See id*. at 66-70, 73.[5]

The Commonwealth filed a petition alleging A.G.-M. committed the above-mentioned delinquent acts by possessing the firearm at school. The juvenile court held a hearing at which Officer Melber testified to the evidence summarized above, and the Commonwealth played the video evidence. L.S. testified that he was "high" that day and got the gun from a backpack he stole from the vice principal's office while looking for marijuana. *See* N.T., 2/23/23, at 95-97, 106.[6] A.G.-M.'s mother testified that she looked in the backpack right before A.G.-M. went to school and the backpack did not contain a gun. *See id*. at 114. A.G.-M.'s stepfather testified he drove A.G.-M. to school that day and saw A.G.-M. go directly from the car and into the school. *See id*. at 122-23. At the conclusion of the hearing, the court found that A.G.-M. possessed the gun, *see id*. at 133, and proceeded to a dispositional hearing that same day.

---

[5] A.G.-M. did not include the video evidence as part of the record in this appeal. However, Officer Melber testified as to the contents of the videos, and the contents of the videos are not in dispute.

[6] L.S. stated that he did not know who owned the backpack. *See* N.T., 2/23/23, at 95-96. He also admitted the Commonwealth filed a petition alleging his delinquency for his role in the incident and was awaiting a hearing. *See id*. at 102-03.

On February 24, 2023, the juvenile court entered the order of adjudication and disposition that placed A.G.-M. in a secure residential facility. A.G.-M. timely appealed, and the trial court issued a scheduling order, which *inter alia*, directed A.G.-M. to file and serve a Pa.R.A.P. 1925(b) statement. A.G.-M. did not comply, and the court authored an opinion suggesting that we dismiss the appeal for A.G.-M.'s noncompliance with Rule 1925. **See** Juvenile Court Opinion, 6/5/23, at 2 (citing, *inter alia*, **Commonwealth v. Lord**, 719 A.2d 306 (Pa. 1998)).

A.G.-M. did not address his noncompliance with Rule 1925, but subsequently filed an appellant's brief raising the following issue:

> Whether or not the evidence as presented at the time of [the ]adjudication hearing was sufficient as a matter of law to support the adjudication when there was no evidence introduced that [A.G.-M.] ever possessed the firearm at the school?

A.G.-M.'s Brief at 4.

Before addressing the merits of this appeal, we consider the juvenile court's suggestion that A.G.-M.'s noncompliance with Rule 1925 requires a finding of waiver. Here, the court's order for a Rule 1925(b) statement was captioned and docketed as a "scheduling order," and the order directed the clerk of the court serve A.G.-M. and his counsel. **See** Order, 3/30/23, at 2. However, neither the order nor the docket contains a notation of service of the order on any party. Absent any indication in the record that the court's order for a Rule 1925(b) statement had been served on A.G.-M.'s counsel, we conclude that there was a breakdown in court operations excusing A.G.-M.'s

noncompliance with Rule 1925(b). *Cf*. *In re L.M.*, 923 A.2d 505, 509-10 (Pa. Super. 2007) (noting, in a termination of parental rights appeal, that strict application of *Lord* necessitates strict interpretation of the rules governing notice of an order for a Rule 1925(b) statement); *cf*. *also* Pa.R.J.C.P. 166-167, (outlining the responsibilities of the clerk of the juvenile courts with respect to maintaining the record and serving and noting service of orders on the docket). Thus, we decline to find waiver due to A.G.-M.'s failure to file a Rule 1925(b) statement.

Although we do not find waiver, we note that this Court may remand for a determination of whether the order for a Rule 1925(b) statement had been served or for the filing of Rule 1925(b) statement *nunc pro tunc* and a responsive Rule 1925(a) opinion. *Cf*. *Commonwealth v. Chester*, 163 A.3d 470, 472 n.2 (Pa. Super. 2017). However, we conclude a remand is unnecessary to review the narrow legal issue presented and the relatively straight-forward record evidence involved in this appeal. Accordingly, we consider the merits of A.G.-M.'s argument that the evidence was insufficient to sustain the adjudication of delinquency . *See id*.

A challenge to the sufficiency of the evidence presents a pure question of law. *See In re D.S.*, 39 A.3d 968, 973 (Pa. 2012). This Court's standard of review is *de novo*, and our scope of review is plenary. *See Interest of E.L.W.*, 273 A.3d 1202, 1205 (Pa. Super. 2022). Furthermore, it is well settled that:

[w]hen a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth. In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a [juvenile's] innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth. The finder of fact is free to believe some, all, or none of the evidence presented.

*Id*. (internal citation omitted).

Here, the juvenile court adjudicated A.G.-M. delinquent based on its finding that A.G.-M. possessed the firearm, which had been in his backpack, and which Officer Melber later recovered from L.S. As this Court has stated:

Where a [juvenile] is not in actual possession of the prohibited items, the Commonwealth must establish that [he] had constructive possession to support the conviction. Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. We have defined constructive possession as conscious dominion, meaning that the [juvenile] has the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish

- 6 -

facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue. . . . [K]nowledge of the existence and location of the contraband is a necessary prerequisite to proving the [juvenile's] intent to control, and, thus, his constructive possession.

If the only inference that the fact finder can make from the facts is a suspicion of possession, the Commonwealth has failed to prove constructive possession. It is well settled that facts giving rise to mere association, suspicion or conjecture, will not make out a case of constructive possession.

*Commonwealth v. Wright*, 255 A.3d 542, 553 (Pa. Super. 2021) (internal citations, quotation marks, and brackets omitted).

A.G.-M. argues the Commonwealth failed to establish that he possessed the firearm because: there was no direct evidence the gun was in his backpack when he was carrying it; the Commonwealth's case relied on circumstantial evidence; and L.S. was high and scared when he told Officer Melber that he took the gun from the backpack. *See* A.G.-M.'s Brief at 7-8. Additionally, A.G.-M. notes that the Commonwealth failed to show where A.G.-M., the backpack, and L.S. were in the three three hours after A.G.-M. arrived at school but before A.G.-M. went to the vice principal's office. *See id*. at 8.

Following our review, we conclude A.G.-M.'s arguments lack merit. Not only do A.G.-M.'s arguments disregard our standard of review, which requires that we view the evidence in a light most favorable to the Commonwealth, *see E.L.W.*, 273 A.3d at 1205, but they also ignore the precepts that circumstantial evidence alone is sufficient to find constructive possession and support an adjudication of delinquency, *see id*.; *accord Wright*, 255 A.3d at 553.

Furthermore, when properly viewed in light of our standard of review, the record contains reasoned basis to sustain the juvenile court's finding that A.G.-M. possessed or constructively possessed the firearm. L.S. testified he found the gun in the backpack he took from the vice principal's office, *see* N.T., 2/23/23, at 95-97, and the juvenile court, as the finder of fact, was entitled to credit that evidence, *see E.L.W.*, 273 A.3d at 1205 (stating that the finder of fact is free to believe some, all, or none of the evidence presented). The court further viewed evidence showing A.G.-M. enter the office with the backpack, L.S. then enter the office shortly thereafter without a backpack, only to exit moments later with the backpack. *See* N.T., 2/23/23, at 50-51, 62-63. Additional circumstantial evidence included the videos which showed that after A.G.-M. went to the vice principal's office and shortly before L.S. went to the office, A.G.-M.'s girlfriend approached and interacted with L.S. in the hallway while using her phone, after which they, and another girl, went to the office. *See id*. at 65-70. Such evidence provided a reasoned basis for the court to infer that A.G.-M. had arranged for someone to take the gun and bookbag out of the office. *Cf. id*. at 131-32.[7] Lastly, there is no dispute that when Officer Melber interviewed L.S. was carrying the bookbag

---

[7] We add that the juvenile court had reasoned basis to infer that the A.G.-M. had the gun in his backpack and knew it was there, when he elected to go to the vice principal's office rather than retrieve his identification from his backpack and show it to the teacher who requested it. *See* N.T., 2/23/23, at 87-88.

which contained a loose 9-mm bullet and A.G.-M.'s identifications. ***See id***. at 36-39

For these reasons, we conclude that A.G.-M.'s arguments do not merit relief, and a remand due A.G.-M.'s failure to file a Rule 1925(b) statement would be an inefficient use of judicial resources. ***Cf***. ***Chester***, 163 A.3d at 472 n.2 (declining to remand in the interest of judicial economy); ***Commonwealth v. Hart***, 911 A.2d 939, 942 (Pa. Super. 2006) (noting that "the law does not require the performance of a futile act"). Accordingly, we affirm the dispositional order on the merits of this appeal.

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/15/2024